**BURNS INTERNATIONAL SECURITY SERVICES, INC., Plaintiff,**

**v.**

**UNITED PLANT GUARD WORKERS OF AMERICA, LOCAL 538, Defendants.**

**No. CIV.A. 3:95cv2653.**

United States District Court,
D. Connecticut.

June 20, 1996.

Paul Edward O'Connell, Ridgefield, CT, Richard U. Stubbs, Jr., Jeffrey C. Hummel, Jay M. Presser, Skoler, Abbott & Presser, Springfield, MA, for Plaintiff.

Gregg D. Adler, Livingston, Adler, Pulda & Meiklejohn, Hartford, CT, Lisa S. Lane, Gregory, Moore, Jeakle, Heinen, Ellison & Brooks, Detroit, MI, for Defendants.

## RULING ON MOTIONS

ARTERTON, District Judge.

Robert Wildermuth was an employee of the plaintiff until his discharge on January 30, 1995. The union ("UPGWA") brought a grievance and the matter was submitted to an arbitrator, Lynn Freedman, on July 19, 1995. The award states as follows: "The grievance is sustained. There was not just cause for the termination of the Grievant. The Grievant is to be reinstated as of the date of his termination with full back pay, seniority and full benefits." *Complaint*, Ex. 2 at 1. Plaintiff brings this action to vacate the arbitrator's decision and award. Defendant counterclaims for enforcement of the award.

Pending are UPGWA's Motion for Judgment on the Pleadings and/or Summary Judgment [DOC. 10], UPGWA's Motion for Rule 11 Sanctions [DOC. 7], and Burns' Motion for Summary Judgment.

### UPGWA's motions for judgment on the pleadings:

### Fed.R.Civ.P. 12(c) [DOC. 10]

Defendant UPGWA contends that plaintiff's Complaint to vacate the arbitration award was untimely, thereby warranting granting of judgment on the pleadings, Fed. R.Civ.P. 12(c), in favor of UPGWA and dismissing plaintiff's claim to vacate the arbitration award. The issue of the timeliness of a Complaint to vacate an arbitration award was recently decided by the Second Circuit in a case involving these same parties, *Burns International Security Services, Inc. v. International Union, United Plant Guard Workers of America,* 47 F.3d 14 (2d Cir.1995) (per curium). The Court held that, in Connecticut, petitions to vacate arbitration awards must be filed within thirty days of the notice of the award:

Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185, provides subject matter jurisdiction for an action to vacate an arbitration award. Since § 301 does not specify a statute of limitations for commencing an action to vacate an arbitration award, the relevant state statute is borrowed. The Connecticut Arbitration Act establishes a thirty-day statute of limi-

tations on motions to vacate an arbitration award. Conn.Gen.Stat. § 52–420(b) ["No motion to vacate, modify or correct an award may be made after thirty (30) days from the notice of the award to the party to the arbitration who makes the motion."] *Id.* at 16.

In this case, the arbitrator's award was issued on October 26, 1995 and received by the plaintiff on or about October 30, 1995. Answer to Counterclaim, ¶ 9. The plaintiff did not file its petition to vacate the award until December 13, 1995, approximately two weeks beyond the limitations period.

■ Plaintiff does not deny that its Complaint was not filed within the thirty day statute of limitations. Pl.'s Mem. in Support of Pl.'s Motion for Summary Judgment and Opposition to Def.'s Motion for Judgment on the Pleadings and/or for Summary Judgment, at 17. However, plaintiff asks the court to determine that the late filing was "excusable neglect" and apply equitable tolling to this case. *Id.* at 17–18.

Plaintiff contends that the delay in filing was a result of mistakes of counsel which are detailed in the attached affidavits of attorneys Hummel and Serpico. Plaintiff's story is as follows: On or about November 13, 1995, plaintiff's attorney Hummel contacted defendant's attorney Lane to inform her that Burns had retained Hummel's firm to begin proceedings to vacate the award. On November 21, 1995, Hummel asked attorney Serpico if his firm would serve as local counsel on the case; Serpico agreed. Hummel represents in his affidavit that he explained to Serpico that he would forward to him by fax and overnight mail a copy of the Complaint which was to be filed the next day. Serpico's affidavit represents that Hummel explained that the Complaint had to be filed "within the next few days". ¶ 2. Serpico received the Complaint on November 22, 1995 but did not file the Complaint at that time. The Complaint was signed by an attorney from Serpico's firm, attorney O'Connell, on November 24, 1995. Serpico represents that despite his intention and understanding, the Complaint was not mailed to the Court for filing at the time of the signing. Rather on November 29, 1995, Ser-pico realized that the Complaint had not been forwarded to the Court, and so on November 30, 1995, the Complaint was "apparently forwarded to the Court via regular mail in the ordinary course of business." Nonetheless, the Complaint was not filed stamped as filed by the Clerk of Court until December 13, 1995. No explanation is given for the November 30 to December 13 delay.

In support of its request that the court determine that the late filing was "excusable neglect" and apply equitable tolling to this case, plaintiff cites *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) and *Cheney v. Anchor Glass Container Corporation,* 71 F.3d 848 (11th Cir.1996). However neither case is applicable. In *Pioneer,* the Supreme Court held that under Bankruptcy Rule 9006(b)(1), which allows a bankruptcy court to permit late filings where the failure to meet the deadline "was the result of excusable neglect," an attorney's inadvertent failure to file a proof of claim can constitute "excusable neglect." And in *Cheney,* the Eleventh Circuit held that under Fed.R.Civ.P. 60(b) ("On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment ... for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect....") a court may find that negligence of counsel constitutes excusable neglect sufficient to grant a 60(b) motion. Neither case involved a statute of limitations and each involved a rule specifically providing for "excusable neglect."

It would appear that this case is controlled by *South v. Saab Cars USA, Inc.,* 28 F.3d 9 (2d Cir.1994) which held that lack of due diligence on the part of a party's attorney is not sufficient to justify application of "equitable tolling" of a statute of limitations. *Id.,* at 12, *citing Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990). *See also Bennett v. United States Lines, Inc.,* 64 F.3d 62, 66 (2d Cir.1995) ("equitable tolling prevents the running of a statute of limitations against a plaintiff who is unaware that he has a cause

of action because of a defendant's fraudulent acts or concealment.").

■ Moreover, even if the court were to hold that "excusable neglect" is a sufficient grounds to toll the statute of limitations, the negligence of counsel in filing this Complaint is hardly "excusable."

■ Accordingly, in light of *Burns International Security Services, Inc. v. International Union, United Plant Guard Workers of America*, 47 F.3d at 16 ("Since [plaintiff] did not file its petition to vacate the award until ... well beyond the thirty-day statute of limitations, ... [the trial judge] properly dismissed the petition under Fed.R.Civ.P. 12(c)"), and the failure of the plaintiff to demonstrate any grounds for equitable tolling of the statute of limitations, UPGWA's motion for judgment on the pleadings is GRANTED and plaintiff's Complaint is dismissed.

### UPGWA's Motion for Summary Judgment [DOC. 10]

UPGWA also moves for summary judgment on its counterclaim to affirm the arbitration award. A motion for summary judgment will be granted where there is no genuine issue as to a material fact and it is clear that party moving for summary judgment is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Here, the burden is on UPGWA to demonstrate the absence of any material factual issue genuinely in dispute. *Vann v. City of New York*, 72 F.3d 1040, 1048 (2d Cir.1995), *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In determining whether a genuine factual issue exists, the court will resolve all ambiguities and draw all reasonable inferences against UPGWA. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir .), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

The motion has two distinct bases. First, UPGWA contends that because plaintiff failed to timely file its Complaint to Vacate the Award, it is barred from raising defenses to the UPGWA's Counterclaim for Enforcement of the Award. UPGWA raises a variant of this contention when it argues that Burns is barred from raising affirmative defenses challenging the validity of the award after the limitations period has expired, and since Burns filed its affirmative defenses on or about February 16, 1996, those affirmative defenses are barred. UPGWA's second contention is that the award should be confirmed because it "[drew] its essence from the terms of the Collective Bargaining Agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

■ As to the first contention, that because plaintiff failed to timely file its complaint to vacate the award, it is barred from raising defenses to the UPGWA's counterclaim for enforcement of the award, UPGWA relies on *Florasynth, Inc. v. Pickholz*, 750 F.2d 171 (2d Cir.1984) and *International Brotherhood of Electrical Workers, Local Union No. 969 v. Babcock & Wilcox*, 826 F.2d 962 (10th Cir.1987). In *Florasynth*, the Court held that under the statute of limitations provision of the Federal Arbitration Act, 9 U.S.C. § 12, a party is barred from raising a motion to vacate the award after the limitations period "even when raised as a defense to a motion to confirm." 750 F.2d at 175. What distinguishes this case from *Florasynth* is that this case was brought pursuant to Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185, which does not specify a statute of limitations for commencing an action to vacate an arbitration award, as a result of which the relevant state statute is borrowed. *See e.g., Local 144 Hotel, Hospital, Nursing Home & Allied Services Union, SEIU, AFL–CIO v. American Nursing Home*, 631 F.Supp. 354, 358 (S.D.N.Y.1986); and *International Association of Heat and Frost Insulators, Local No. 12 v. Insulation Quality Enterprises, Ltd.*, 675 F.Supp. 1398, 1404 (E.D.N.Y.1988). Hence the determination whether a motion to vacate can be raised as a defense to a

motion to confirm after the limitations period has expired is to be made on the basis of the relevant state statute. In *Babcock & Wilcox*, the Tenth Circuit, interpreting the Uniform Arbitration Act, as adopted in Colorado, held that defenses challenging the validity of an arbitration award cannot be raised in an action to confirm the award filed after the limitations period has expired. 826 F.2d at 964–966. Interpreting relevant state statutes of limitations, several other Circuits have reached the same conclusion: *Local 2, International Brotherhood of Electrical Workers, AFL–CIO v. Anderson Underground Construction, Inc.*, 907 F.2d 74,75–76 (8th Cir.1990) (Missouri); *Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County v. Celotex Corp.*, 708 F.2d 488, 490 (9th Cir.1983); *Service Employees International Union, Local No. 36, AFL–CIO v. Office Center Services, Inc.*, 670 F.2d 404, 412 (3d Cir.1982) (Pennsylvania); and *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co., Inc.*, 628 F.2d 1023, 1025 (7th Cir.1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). However, each of the state arbitration statutes at issue in these case, except the California statute, is a variant of the Uniform Arbitration Act. Connecticut's Arbitration statute is not modeled on the Uniform Arbitration Act.

New York's arbitration statute, N.Y.C.P.L.R. §§ 7510, 7511, is also not modeled on the Uniform act and New York courts have interpreted it to allow parties to assert defenses against confirmation despite expiration of the limitations period. *Local 144 Hotel, Hospital, Nursing Home & Allied Services Union, SEIU, AFL–CIO v. American Nursing Home*, 631 F.Supp. at 358; *International Association of Heat and Frost Insulators, Local No. 12 v. Insulation Quality Enterprises, Ltd.*, 675 F.Supp. at 1404; and *Bevona v. Puretz*, 140 L.R.R.M. 2531 (S.D.N.Y.1992). Plaintiff relies on this line of cases.

However, the New York arbitration statute differs in at least one significant regard from the Connecticut arbitration statute. N.Y.C.P.L.R. § 7511 provides: "An application to vacate or modify an award **may** be made by a party within ninety days after its delivery to him." (Emphasis added.) In contrast, the Connecticut arbitration statute, Conn.Gen.Stat. § 52–420(b), provides: **"No motion to vacate, modify or correct an award may be made** after thirty (30) days from the notice of the award to the party to the arbitration who makes the motion." The New York statute allows but does not mandate that applications to vacate or modify awards be made within the limitation period; the Connecticut statute requires that motions to vacate be made within the limitations period. Hence, the New York statute "permits a party to wait until the victor in the arbitration moves to confirm the award and then raise as defenses the same grounds he could have raised on a motion to vacate or modify. This option is available to the party opposing confirmation of the award even if the action to confirm is filed more than ninety days after delivery of the award." *International Association of Heat and Frost Insulators, Local No. 12 v. Insulation Quality Enterprises, Ltd.*, 675 F.Supp. at 1404. (Citations omitted.)

The issue before the Court is whether, under the Connecticut arbitration statute, Conn.Gen.Stat. § 52–420(b), affirmative defenses to a confirmation claim can be asserted after the expiration of the period of limitation.

Plaintiff reads *Burns v. Int'l Union, UPGWA* as favoring its view. In *Burns*, the Court held that Burns' motion to vacate was untimely but in reaching its decision to grant the union's motion for summary judgment on its claim for confirmation apparently considered the plaintiff's defense. That is, the Court did not grant the union's motion to confirm on the grounds that plaintiff could assert no defense, rather the Court reached the merits of the issue whether the award drew "its essence from the collective bargaining agreement." 47 F.3d at 17. However, because *Burns* did not make an explicit holding on this issue, *Burns* is not authoritative support for plaintiff's contention.

Plaintiff also relies on *Carr v. Trotta*, 7 Conn.App. 272, 508 A.2d 799 (Conn.App.Ct. 1986). In *Carr*, the Court distinguished the

case before it from a line of cases which held that when a party failed to seek to vacate an arbitration order within the limitations period, the trial court must confirm the award. *See, e.g., Vail v. American Way Homes,* 435 A.2d 993, 181 Conn. 449 (1980). The distinction in *Carr* was that the party opposing the award challenged not the award itself but the authority or jurisdiction of the arbitration to issue the award. The Court held that subject matter jurisdiction could be raised at any time even after the expiration of the limitations period. *Dunne v. Dunne,* 209 N.J.Super. 559, 508 A.2d 273, 274–275 (1986).

The line of cases from which *Carr* is distinguished provides the construction of Conn. Gen.Stat. § 52–420(b) which guides this court. For example, in *Amalgamated Transit Union Local 1588 v. Laidlaw Transit, Inc.,* 632 A.2d 713, 33 Conn.App. 1 (1993), the court reaffirmed the line of cases from which *Carr* was distinguished. The *Laidlaw* court held that a trial court had exceeded its authority when on a motion to confirm an award, filed after the expiration of the limitations period, the court not only confirmed the award, but found that the defendant had complied with the award. The Court held that the latter determination was beyond the trial court's authority because the period during which the plaintiff was allowed to move to "vacate, modify or correct" the order had expired. The Court wrote, "if a motion to vacate, modify or correct· is not made within the thirty day time limit specified in General Statutes § 52–420, the award may not thereafter be attacked on any of the grounds specified in §§ 52–418 and 52–419." *Id.,* at 715. Among the grounds specified in Conn. Gen. Stats. § 52–418 is the charge that the "arbitrators have exceeded their powers," which is the allegation here.

■ Hence, under Connecticut law, plaintiffs are barred by § 52–420 from seeking to vacate the award after the expiration of the limitations period; the bar applies regardless of whether a party seeks to vacate via a complaint or an affirmative defense.

Based on the foregoing, the court GRANTS UPGWA's motion for summary judgment.

## Defendant's Motion for Rule 11 Sanctions [DOC. 7]

■ The basis of this motion can be described rather easily: UPGWA contends that the plaintiff knew that it was filing an untimely complaint and hence should be subject to Rule 11 sanctions. UPGWA contends that because plaintiff was aware of the thirty day statute of limitations, having been a party to the Second Circuit case, and because UPGWA informed Burns that the complaint was untimely, Def.'s Motion for Sanctions, Ex. A, the court should impose sanctions pursuant to Fed.R.Civ.P. 11. The key question is whether the plaintiff's argument that "excusable neglect" should toll the statute is a sanctionably weak argument.

Plaintiff responds that even if the Court decides to dismiss the Complaint as untimely, sanctions should not be imposed. Plaintiff's opposition to sanctions rests on two grounds. First, plaintiff contends that the purpose for imposing sanctions is to deter future conduct, see Advisory Committee Notes to the 1993 Amendment ("The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe .than reasonably necessary to deter repetition of the conduct by the offending persons or comparable conduct by similarly situated persons"), and the events which led to the untimely filing of the Complaint were unique and not likely to be repeated. Second, and most importantly, plaintiff contends that its argument that the court can toll the statute of limitations for counsel's excusable neglect is nonfrivolous, and therefore, not sanctionable.

In its reply brief, defendant, in addition to arguing that plaintiff's explanation of the delay in filing the Complaint is "dubious," claims that the Complaint is frivolous because the law regarding timeliness is well-established. Defendant does not argue that the plaintiff's argument for the application of equitable tolling is also frivolous.

Rule 11 sanctions can be imposed in this case only if the court finds that the Complaint "contains claims, defenses, and other legal contentions that are not warranted by existing law or by a nonfrivolous argument

for the extension, modification, or reversal of existing law or the establishment of new law." Fed.R.Civ.P. 11(b)(2). The Second Circuit has stated that sanctions under this provision are proper "if, under an objective standard of reasonableness, it is clear ... that there is no reasonable argument to extend, modify or reverse the law as it stands." *Caisse Nationale de Credit Agricole–CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir.1994) (internal quotation marks and citations omitted). *See also Healey v. Chelsea Resources Ltd.*, 947 F.2d 611, 626 (2d Cir.1991) ("Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success."), *quoted in Caisse Nationale*, 28 F.3d at 264.

Sanctions are appropriate in this case for two reasons. First, plaintiff has failed to establish that counsel's negligence in filing the Complaint was, in any sense, "excusable." And, second, even if the court were to find that plaintiff's failure to file a timely Complaint was due to "excusable neglect," *South v. Saab Cars USA, Inc., supra*, leaves no room for plaintiff's urging the court to hold that "excusable neglect" is a sufficient grounds for equitable tolling. Indeed, the Supreme Court has unequivocally held that "the principles of equitable tolling ... do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Department of Veterans Affairs*, 498 U.S. at 96, 111 S.Ct. at 457–58. Accordingly, defendant's motion for Rule 11 sanctions is GRANTED.

### Plaintiff's Motion for Summary Judgment [DOC. 21]

■ While the court has dismissed the Complaint on the grounds that it was untimely filed, and granted the defendant's motion for summary judgment on its cross claim, the court, following the lead of the Second Circuit in *Burns v. Int'l Union, UPGWA, supra*, will nonetheless comment on the merits of plaintiff's motion for summary judgment on its Complaint to vacate the award.

Plaintiff contends that the arbitrator's decision to reinstate the grievant was not authorized by the collective bargaining agreement ("CBA"), which provides, in part:

The arbitrator shall not have the right to amend, take away, modify, add to, change, or disregard any of the provisions of this Agreement. In the event that an arbitrator shall determine that an employee has violated an Employer rule, regulation, or policy for which said employee was charged, the arbitrator shall not have the right to reduce, modify, or in any way alter the penalty assessed by the Employer.

Article VI, § 5–d.

According to plaintiff, the arbitrator found that the grievant committed three "Class Two offenses" within one year, that the employer's rules call for a discharge for three Class Two offenses in a year, and that the arbitrator recognized this rule, but nonetheless held that the discharge was not warranted and ordered reinstatement. Plaintiff relies on *United Paperworkers International Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) and two Second Circuit decisions, *Leed Architectural Products, Inc. v. United Steelworkers of America, Local 6674*, 916 F.2d 63 (2d Cir. 1990) and *Harry Hoffman Printing, Inc. v. Graphic Communications International Union, Local 261*, 950 F.2d 95 (2d Cir.1991), each of which holds that an arbitrator's authority to interpret the terms of a collective bargaining agreement, an authority to which courts must give great deference, must not ignore the plain language of the agreement.

Defendant contends that there is no company policy mandating dismissal for three Class I violations, and that the arbitrator found as much. Moreover, defendant contends that the arbitrator did not find that the grievant had committed three Class Two violations.

The arbitrator's award, which is attached to the Complaint, *see, especially*, 9–10, points to an ambiguity in the CBA. While Article VI, § 5d provides that "[i]n the event that an arbitrator shall determine that an employee has violated an Employer rule, regulation, or policy for which said employee was charged, the arbitrator shall not have the right to reduce, modify, or in any way alter the penalty assessed by the Employer," Article III includes among management rights "the right to discipline, suspend, or discharge em-

ployees for just cause." The arbitrator concluded that "the Arbitrator is bound by the just cause standard in deciding whether the penalty of termination imposed by the Employer for all three Class Two infractions ... is proper."

Moreover, the arbitrator also found that there is no clear policy mandating dismissal after three Class Two violations. "Burns Rules and Discipline Policy," Def.'s Brief in Reply to Plaintiff' Motion for Sum. Judge., Ex. B., states, as follows:

> The Second classification of offenses are CLASS TWO OFFENSES. Class Two Offenses are progressive in that, a reoccurrence of any Class Two Offense within a one year period, will result in the next progressive step in discipline.
>
> 1. First Offense—Documented counseling with Administrative Lieutenant.
> 2. Second Offense—Documented counseling with Site Chief.
> 3. Third Offense—Suspended pending a meet with the District Manager to determine if employment will continue.

Referring to the this policy, the arbitrator wrote, "Nowhere does it state that termination is mandated by a third offense."

There is some confusion in the arbitrator's decision as to whether she found that the grievant had committed three Class Two violations. Reading her award, one could reasonably conclude that the arbitrator found that the grievant had committed three violations; the first two were not the subject of this arbitration ("The Arbitrator has to accept the previous Class IIs as a given") and the third, which was the subject of this arbitration, was found to be an offense. However, the arbitrator's award also contains language suggesting that she found that one of the three alleged offenses was, in fact, not an offense. Thus, the arbitrator refers to "the lack of retraining for the May, 1994 incident, as an indication that the Grievant had not violated any of the rules and regulations of the Employer."

Applying the just cause standard, the arbitrator found that just cause did not exist for grievant's termination. The arbitrator con-

sidered three factors in reaching that decision. First, while "inattention to or neglect of duty" is listed in the "Burns Rules and Discipline Policy" as a Class Two Offense, it is also characterized in that same document as a "minor infraction." Second, the employer did not provide the grievant with "documented counseling" after what is characterized as the first offense; hence, the employer "did not treat this offense as a true violation ." Third, the grievant did not have a meeting with the District Manager following the "third offense,"as is required under "Burns' Rules and Discipline Policy," and thus the grievant was denied due process. Weighing these three factors, the arbitrator concluded that the employer did not have just cause for terminating the grievant.

The point of disagreement between the parties is really whether the arbitrator's application of the just cause standard in her determination whether grievant's termination was proper was authorized by the collective bargaining agreement. The plaintiff contends that application of the just cause standard was not authorized by the CBA and cites two First Circuit decisions, *S.D. Warren Company v. United Paperworkers' International Union, AFL–CIO, Local 1069*, 846 F.2d 827 (1st Cir.1988) and *Georgia–Pacific Corporation v. Local 27, United Paperworkers International Union*, 864 F.2d 940 (1st Cir.1988), *rehearing and rehearing en banc denied* (1989). In *Warren*, the Court held that where the collective bargaining agreement provided (1) that "the Company reserves the sole right to ... discharge employees for proper cause," and (2) that "violation of ... Rule 7A [prohibiting use on Company property of marijuana or other drugs] is considered cause for discharge," permits a court to find that an arbitrator exceeds his or her authority where he or she finds that the decision to discharge an employee for a violation of 7A is subject to reversal by an arbitrator applying the just cause standard. In *Georgia–Pacific Corporation*, the Court held that under a collective bargaining agreement which states both that "[a]ny employee may be discharged for just cause," and that "[w]ithout limiting the generality of the foregoing some of the immedi-

ate causes for immediate discharge are ... dishonesty," an arbitrator's ruling that an employee who was guilty of dishonesty was nonetheless terminated without just cause was "arbitral excess."

Defendant does not make much effort to distinguish these cases, but the clearest basis for distinction is the degree of ambiguity in the collective bargaining agreement. In both First Circuit cases, the court concluded that the language of the collective bargaining agreement was clear and unambiguous. The language in the present agreement is more ambiguous than the agreements at issue in the First Circuit cases. In light of that ambiguity, and the general principle that "the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract," *Misco,* 484 U.S. at 38, 108 S.Ct. at 370–71, *citing Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424, the court DENIES plaintiff's motion for summary judgment.

In summary, the Court grants defendant's motion for judgment on the pleadings [DOC. 10], grants UPGWA's motion for summary judgment [DOC. 10], grants UPGWA's motion for Rule 11 sanctions [DOC. 7], and denies plaintiff's motion for summary judgment [DOC. 21].

IT IS SO ORDERED.